UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　　　　　　　　Plaintiff,<br><br>v.<br><br>CALLIE JOYCE PADILLA,<br><br>　　　　　　　　　　　　Defendant. | Case No.: 19-cr-03331-GPC<br><br>**ORDER GRANTING MOTION FOR COMPASSIONATE RELEASE**<br><br>**[ECF Nos. 42, 44]** |

Defendant Callie Joyce Padilla has filed a motion seeking compassionate release or reduction of her sentence under 18 U.S.C. § 3582(c). ECF Nos. 42, 44. The Government opposes. ECF No. 46 ("Opp."). For the reasons that follow, Padilla's motion is GRANTED.

## I. BACKGROUND

Defendant was convicted by guilty plea of one count of Importation of a Controlled Substance in violation of 21 U.S.C. §§ 952 and 960. ECF No. 22. Defendant was sentenced to a term of imprisonment of 30 months, followed by 3 years of supervised release. ECF No. 29. Defendant is presently serving her sentence at the Federal Medical Center ("FMC") Carswell. ECF No. 44 at 2. As of today's date, Padilla has served 10 months of her sentence.

1

Padilla is 47-years-old and suffers from chronic obstructive pulmonary disease ("COPD"), congenital heart failure, heart disease, kidney failure, and a gastric ulcer. ECF No. 23 ("Presentence Investigation Report" or "PSR") at 10. Padilla reported that her heart functions at 40 percent of its full capacity and that she takes blood pressure medication due to her poor circulation. PSR at 11. Padilla additionally suffers from asthma, hypertension, and sleep apnea. ECF No. 44 at 1. She has been diagnosed with cervical cancer, and has undergone several serious medical procedures, including removal of her uterus, removal of her gall bladder, and gastric bypass surgery. PSR at 11. Padilla also suffers from bipolar disorder and adult personality disorder; she has received Social Security disability ("SSI") benefits for these conditions since age 25. *Id.* at 11.

## II.   DISCUSSION

Defendant now moves for release under 18 U.S.C. § 3582(c)(1)(A), which provides, in relevant part:

> The court may not modify a term of imprisonment once it has been imposed except that—
>
> (1) in any case—
>
> (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
> (i) extraordinary and compelling reasons warrant such a reduction; or
>
> (ii) the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been

> made by the Director of the Bureau of Prisons that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g);
>
> . . .
>
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

Accordingly, there are two questions before the Court: first, whether Defendant has satisfied the administrative exhaustion requirement, and second, whether Defendant has demonstrated extraordinary and compelling reasons for a sentence reduction.

The First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194, "amends numerous portions of the U.S. Code to promote rehabilitation of prisoners and unwind decades of mass incarceration." *United States v. Brown*, 411 F. Supp. 3d 446, 448 (S.D. Iowa 2019) (citing Cong. Research Serv., R45558, The First Step Act of 2018: An Overview 1 (2019)).  One of the changes resulting from the Act is that it "allows defendants, for the first time, to petition district courts directly for compassionate release." *Id*.  As one district court recently explained:

> The effect of the amendments is that a district judge has the ability to grant a prisoner's motion for compassionate release even in the face of BOP opposition or its failure to respond to a prisoner's request for compassionate release in a timely manner. . . . Congress's express purpose in implementing these changes was to expand the use of compassionate release sentence reductions under § 3582(c)(1)(A).  *See, e.g.,* First Step Act, PL 115-391, 132 Stat 5194, 5239 (titling the subsection amending § 3582, "Increasing the Transparency and Use of Compassionate Release"); 164 Cong. Rec. S7314- 02, 2018 WL 6350790 (Dec. 5, 2018) (statement by Senator Cardin, cosponsor of the First Step Act, noting that its purpose was to "expand[s] compassionate release" and "expedite[] compassionate release applications").

*United States v. Young*, No. 2:00-CR-00002-1, 2020 WL 1047815, at *5 (M.D. Tenn. Mar. 4, 2020); *see also United States v. Maumau*, No. 2:08-CR-00758-TC-11, 2020 WL

806121, at *4 (D. Utah Feb. 18, 2020) ("[O]ne of the express purposes of the First Step Act was to increase the use and transparency of compassionate release.").

### A.    Exhaustion Requirement

Section 3582(c)(1)(A) imposes an exhaustion requirement requiring a defendant to fully exhaust all administrative rights to appeal before a defendant may move the court for release.  On April 28, 2020, Padilla filed a first motion for emergency compassionate release.  ECF No. 39.  On April 30, 2020, the Court denied this motion without prejudice finding that Padilla had failed to either exhaust all administrative rights to appeal or show that 30 days have elapsed since the receipt of such a request by the warden of Padilla's facility.  ECF No. 40.  On April 23, 2020, the Warden of FMC Carswell denied Padilla's request for Compassionate Release/Reduction in Sentence.  ECF No. 46 at 6.  On April 29, 2020, the Warden of FMC Carswell issued a second denial rejecting Padilla's request, stating that Padilla failed to meet the criteria for a "Reduction In Sentence based on Medical Circumstances – Debilitated Medical Condition" since Padilla is "able to complete self-care activities independently and are not confined to a bed or wheelchair more than 50% of waking hours."  ECF No. 44 at 4.  On April 29, 2020, Padilla filed an appeal through the Administrative Remedies Program.  ECF No. 46 at 6.  To date, no decision has been issued and over 40 days have elapsed since Padilla filed this appeal.  The Government does not contest the issue of exhaustion in its opposition.

"Even where exhaustion is seemingly mandated by statute . . . the requirement is not absolute."  *Washington v. Barr*, 925 F.3d 109, 118 (2d Cir. 2019).  There are generally three bases for waiver of an exhaustion requirement.  *See United States v. Perez*, ___ F.Supp.3d ___, No. 17-CR-513-3 (AT), 2020 WL 1546422 (S.D.N.Y. Apr. 1, 2020) (discussing exceptions to statutory exhaustion in context of motion for compassionate release during COVID-19 pandemic).  "First, exhaustion may be unnecessary where it would be futile, either because agency decisionmakers are biased or because the agency has already determined the issue."  *Washington*, 925 F.3d at 118.

"[U]ndue delay, if it in fact results in catastrophic health consequences, could make exhaustion futile." *Id.* at 120.  Second, "exhaustion may be unnecessary where the administrative process would be incapable of granting adequate relief," including situations where "the relief the agency might provide could, because of undue delay, become inadequate." *Id.* at 119-20.  Third, "exhaustion may be unnecessary where pursuing agency review would subject plaintiffs to undue prejudice." *Id.* at 119

The Court concludes that the exceptions to the exhaustion requirement counsel in favor of granting Defendant's request.  Here, over 40 days have elapsed since the Padilla's appeal was made to the Administrative Remedies Program.  If Padilla contracts COVID-19 before her appeals are exhausted, that undue delay might cause her to endure precisely the catastrophic health consequences she now seeks to avoid.  Requiring Padilla to continue her pursuit of agency review would subject her to undue prejudice—the heightened risk of severe illness—while attempting to exhaust her appeals.

Therefore, in light of the urgency of Padilla's request and the potential for serious health consequences given her underlying conditions, the Court waives the exhaustion requirement of Section 3582(c)(1)(A).  *See United States v. Haney*, No. 19-CR-541 (JSR), 2020 WL 1821988___ F.Supp.3d ___, at *4 (S.D.N.Y. Apr. 13, 2020) (courts have discretion to waive the exhaustion requirement where doing so would serve Congressional objectives in light of circumstances now faced by prisoners as a result of the COVID-19 pandemic); *United States v. Decator*, No. CR CCB-95-0202, 2020 WL 1676219, at *2 (D. Md. Apr. 6, 2020) (finding motion properly before the court where warden denied petitioner's request).

### B.  Extraordinary and Compelling Reasons

Section 3582(c)(1)(A) permits a sentence reduction only upon a showing of "extraordinary and compelling reasons," and only if "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." Section 1B1.13 of the Sentencing Guidelines further explains that a sentence reduction under 18 U.S.C. §

3582(c)(1)(A) may be ordered where a court determines, "after considering the factors set forth in 18 U.S.C. § 3553(a)," that:

> (1) (A) Extraordinary and compelling reasons warrant the reduction; or
>
> . . .
>
> (2) The defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g); and
>
> (3) The reduction is consistent with this policy statement.

Application Note 1 to this Guidelines provision enumerates certain circumstances constituting "extraordinary and compelling reasons" that justify a sentence reduction, including certain medical conditions, advanced age, certain family circumstances, or some "other" reason "[a]s determined by the Director of the Bureau of Prisons." The Note specifies that "a serious physical or medical condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover" constitutes "extraordinary and compelling reasons" which justify compassionate release.

      Padilla argues that her numerous health conditions qualify as extraordinary and compelling reasons justifying her release. The Government agrees that Padilla's conditions qualify as factors identified by the Centers for Disease Control and Prevention ("CDC") that heighten the risk of severe injury or death if she were to contract COVID-19. On this basis, the Government notes that Padilla has an "extraordinary and compelling reason supporting compassionate release." Opp. at 9. However, the Government opposes Padilla's motion on basis that Padilla would pose a danger to public safety if released based on the nature of her offense, the Court has previously considered Padilla's mental and physical ailments when imposing a 30-month sentence, and Padilla has no known place to live in the United States.

      The Court finds that the heightened risks that Padilla faces based on her medical conditions if she were to contract COVID-19 weigh heavily in favor of her release. The

CDC has warned that individuals who suffer from asthma, high blood pressure, serious heart conditions, chronic kidney disease undergoing dialysis, or are otherwise immunocompromised as a result of cancer treatment or immune deficiencies are at higher risk of becoming severely ill and dying from COVID-19.  *See People Who Are at Higher Risk for Severe Illness*, Ctrs. for Disease Control and Prevention, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-at-higher-risk.html.  Additionally, COVID-19 has been found to trigger severe reactions in patients with preexisting cardiovascular disease, making them more likely to die from infection than healthy individuals.  *See* Dara K. Lee Lewis, *How Does Cardiovascular Disease Increase the Risk of Severe Illness and Death From COVID-19*, HARVARD HEALTH PUBLISHING, https://www.health.harvard.edu/blog/how-does-cardiovascular-disease-increase-the-risk-of-severe-illness-and-death-from-covid-19-2020040219401.

Any incarcerated person with one of the underlying conditions identified by the CDC is unlikely to be able "to provide self-care within the environment of a correctional facility" to avoid contracting COVID-19.  U.S. Sentencing Guidelines § 1B1.13 cmt. 1(A)(ii).  *See also* Katelyn Polantz, *Inmates Sue for Soap and Paper Towels as Coronavirus Spreads in Jails*, CNN INT'L (Mar. 31, 2020), https://www.cnn.com/2020/03/31/politics/inmates-sue-coronavirus-jails/index.html.  Prison conditions mean incarcerated individuals, as well as society as a whole, are safer the more defendants are released.  *See* The Times Editorial Board, *Coronavirus Makes Jails and Prisons Potential Death Traps. That Puts Us All in Danger*, L.A. TIMES (Mar. 18, 2020), https://www.latimes.com/opinion/story/2020-03-18/coronavirus-prisons-releases.  This is especially true for defendants like Padilla who are at high risk of contracting severe cases, and even dying, of COVID-19.  *See United States v. Ramos*, ___ F.Supp.3d ___, No. 18-CR-30009-FDS, 2020 WL 1478307, at *1 (D. Mass. Mar. 26, 2020) ("[I]t is not possible for a medically vulnerable inmate . . . to isolate himself in this institutional setting.").  Additionally, as one court has noted, "it is apparent that cases of

COVID-19 have spread rapidly through the federal prison system, including FMC-Carswell where the defendant is located, despite the BOP's commendable efforts to stop the virus from spreading." *United States v. Castillo*, No. CR H-08-146-01, 2020 WL 2820401, at *4 (S.D. Tex. May 29, 2020) (citing Mark Dent, *et al.*, *Sick, Elderly, and Fearing Coronavirus: Life Inside Fort Worth's Women's Federal Prison*, FORT WORTH STAR-TELEGRAM (April 20, 2020)).  In other words, Padilla has effectively demonstrated a nexus between her medical conditions and the ongoing pandemic which supports a reduction under section 3582.

The section 3553(a) sentencing factors also support Padilla's release.  In particular, one such factor is "the need for the sentence imposed . . . to provide the defendant with . . . medical care . . . in the most effective manner."  18 U.S.C. § 3553(a)(2)(D).  Padilla is unlikely to be able to get the medical care she needs in the midst of this ongoing pandemic.  *See United States v. Gonzalez*, No. 2:18-CR-0232 (TOR), 2020 WL 1536155, at *2 (E.D. Wash. Mar. 31, 2020) (granting releasing for defendant who suffered from chronic obstructive pulmonary disease since her condition worsened without proper medical treatment while incarcerated); *United States v. Garcha*, No. 19-CR-00663 (EJD), 2020 WL 1593942, at *4 (N.D. Cal. Apr. 1, 2020) (the jail's inability to provide necessary treatment for the defendant's medical condition, whether due to burdens associated with managing COVID-19 or otherwise, threatened to further compromise the defendant's health).  Padilla states that she has suffered three different heart attacks while being in custody and was told that her heart condition severely reduced her life expectancy.  ECF No. 42 at 5.  Further, Padilla has been unable to see a doctor during her period of incarceration at FMC Carswell or to obtain access to medical equipment, and she has witnessed other individuals at FMC Carswell dying due to untreated infections and their inability to obtain treatment.  ECF No. 42 at 9.  *See* Tana Ganeva, *For Women At A Federal Prison Hospital In Texas, Fear That Coronavirus Will Spread 'Like Wildfire,'* THE APPEAL (Apr. 21, 2020) (noting that FCI Carswell is at 130 percent

8

19-cr-03331-GPC

capacity and that 300 inmates are in one unit); Lisa Freeland et al., *We'll See Many More Covid-19 Deaths in Prisons if Barr and Congress Don't Act Now*, WASH. POST (Apr. 6, 2020), https://www.washingtonpost.com/opinions/2020/04/06/covid-19s-threat-prisons-argues-releasing-at-risk-offenders/ (discussing "wholly inadequate medical care" in federal prisons).

Sections 3553 and 3582 also require consideration of public safety. 18 U.S.C. §§ 3553(a)(2)(C), 3582(c)(1)(A)(ii). Padilla's underlying offense was nonviolent and at the time of her sentencing, Padilla's total criminal history score was zero. PSR at 7. These facts weigh in favor of Padilla's release. *See United States v. Fowler*, No. 17-CR-00412-VC-1, 2020 WL 3034714, at *1 (N.D. Cal. June 6, 2020) (defendant who was convicted of distributing and conspiring to distribute methamphetamine had never committed a violent crime and was therefore "not a danger to the community"). The Government notes that "it appears that BOP denied home confinement for [Padilla] due to her history of violence" but does not provide any further information. Opp. at 10. Ultimately, the Court finds that minimal prior criminal record, which is further contextualized by the history of severe domestic violence and sexual and physical abuse that Padilla was subjected to throughout her life, counsels in favor of her release. *See Fowler*, 2020 WL 3034714, at *1 (granting release for defendant who had served 11 months of the 60 month sentence since her chronic asthma constituted an "extraordinary and compelling" reason); *United States v. Castillo*, No. CR H-08-146-01, 2020 WL 2820401, at *1 (S.D. Tex. May 29, 2020) (granting release for defendant suffering from diabetes and heart issues who had served 12 years of a life sentence).

"Recognizing the risk of COVID-19 outbreaks in prisons, Congress, the President, and the Department of Justice have begun encouraging steps to release some prisoners to safer home environments." *United States v. Rodriguez*, No. 2:03-CR-00271-AB-1, 2020 WL 1627331, at *10 (E.D. Pa. Apr. 1, 2020). The coronavirus relief bill enacted on March 27, 2020 allows the Attorney General to expand the BOP's ability to move

prisoners to home confinement. *See* Coronavirus Aid, Relief, and Economic Security (CARES) Act, Pub. L. No. 116-136, § 12003(b)(2) (2020). This congressional action came after Attorney General William Barr sent a memo to the Director of the BOP recognizing that "there are some at-risk inmates who are non-violent and pose minimal likelihood of recidivism and who might be safer serving their sentences in home confinement rather than in BOP facilities." Memo. from Attorney Gen. William Barr to Director of BOP, *Prioritization of Home Confinement as Appropriate in Response to COVID-19 Pandemic* (Mar. 26, 2020), https://www.politico.com/f/?id=00000171-1826-d4a1-ad77-fda671420000. Attorney General Barr accordingly requested that the BOP use its statutory authority to release certain inmates to home confinement. *Id.*

Ultimately, it is clear that Padilla is in need of proper treatment to address her mental health and substance abuse issues. Padilla indicates that if released, she would reside with her 27-year-old daughter along with her four grandchildren in Racine, Wisconsin. ECF No. 42 at 3, 5. At the time of her arrest, Padilla resided in Mexico. PSR at 10. It does not appear that Padilla has a residence in the Southern District of California. The Court will reduce the sentence to time served and modify the conditions of supervised release to provide for home incarceration at the home of Defendant's daughter in Racine, Wisconsin. *See United States v. Ben-Yhwh*, ___ F. Supp. 3d ___, No. CR 15-00830 LEK, 2020 WL 1874125, at *1 (D. Haw. Apr. 13, 2020) (reducing sentence to time served and mandating home confinement on supervisory release); *United States v. Johnson*, No. 4:00-CR-40023, 2020 WL 1434367, at *5 (W.D. Ark. Mar. 24, 2020) (reducing sentence to time served and requiring defendant to live at specific care center on supervised release for 5 years); *United States v. Flores*, No. 19-CR-6163L, 2020 WL 3041640 (W.D.N.Y. June 8, 2020) (reducing sentence to time served and ordering 18 months of home confinement); *United States v. Ramos*, No. 18-CR-30009-FDS, 2020 WL 1478307, at *2 (D. Mass. Mar. 26, 2020) (granting release and ordering home detention). Since home incarceration in Wisconsin will require transfer of

supervision to the Eastern District of Wisconsin, the Court will add a term of supervised release that requires Defendant to reside in a Residential Reentry Center to permit the processing of the transfer.

### III.    FINDINGS

In light of the heightened medical risk the COVID-19 pandemic poses to Padilla in particular, there are extraordinary and compelling reasons to order her immediate release from FMC Carswell.  "The COVID-19 pandemic is extraordinary and unprecedented in modern times in this nation." *United States v. Hernandez*, No. 18-cr-00834 (PAE), 2020 WL 1684062, at *3 (S.D.N.Y. Apr. 2, 2020).  "It presents a clear and present danger to free society for reasons that need no elaboration." *Id.*  The CDC has warned thatCOVID-19 poses a heightened risk to those incarcerated in jails and prisons. *Interim Guidance on Mgmt. of Coronavirus Disease 2019 (COVID-19) in Correctional and Detention Facilities*, Ctrs. for Disease Control and Prevention 2 (Mar. 23, 2020), https://www.cdc.gov/coronavirus/2019-ncov/downloads/guidance-correctional-detention.pdf.  The conditions at FMC Carswell raise particular concerns for Padilla given her medical vulnerabilities, and her continued incarceration over the coming weeks would impose upon Padilla—in addition to other inmates and staff—additional and unnecessary health risks that can be minimized by her early release. *See, e.g.,* Tana Ganeva, *For Women At A Federal Prison Hospital In Texas, Fear That Coronavirus Will Spread 'Like Wildfire,'* THE APPEAL (Apr. 21, 2020); Mark Dent, *et al.*, *Sick, Elderly, and Fearing Coronavirus: Life Inside Fort Worth's Women's Federal Prison*, FORT WORTH STAR-TELEGRAM (April 20, 2020).

/ / /
/ / /
/ / /
/ / /
/ / /

## IV. CONCLUSION

For the reasons set forth above, the Motion for Compassionate Release is **GRANTED**, to be effective at the close of business today. Padilla's sentence is **MODIFIED** and **REDUCED** to time served pursuant to 18 U.S.C. § 3852(c), effective immediately, to be followed by a 36-month term of supervised release under conditions set forth in the original judgment, plus the following added special conditions: (1) Padilla shall be placed in home confinement for a period of 18 months without electronic monitoring where she will be restricted to her residence at all times except for medical necessities and court appearances or other activities specifically pre-approved by the Court; (2) Padilla shall reside in a Residential Reentry Center as directed by the U.S. Probation Office for a period of up to 120 days to permit the transfer of Padilla's case to Wisconsin in order to facilitate the home confinement term.

It is **FURTHER ORDERED** that Padilla shall remain in self-quarantine for a period of time not less than 14 days after her release.

Padilla is **HEREBY ORDERED** to report by telephone to the U.S. Probation Office in San Diego, California within 24 hours of her release from BOP custody.

The Government shall serve a copy of this order on the Warden at FMC Carswell immediately. The Warden of FMC Carswell shall immediately release Defendant Callie Joyce Padilla from custody. In the event that the Warden or any party requests any clarification of or modification to this order, they shall make such request in writing immediately upon receipt of the order.

**IT IS SO ORDERED.**

Dated: June 11, 2020

Hon. Gonzalo P. Curiel
United States District Judge

12

19-cr-03331-GPC